AO 106 (Rev. 01/09)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

### for the
### District of Kansas

FILED
U.S. District Court
District of Kansas

APR 08 2014

Clerk, U.S. District Court
By: _____ Deputy Clerk

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>A HTC cellular phone Model PN07200, currently stored at Wichita<br>Police Department, Undercover Section, Wichita, Kansas, in the<br>District of Kansas. | )<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. 14-M-6094-01-KGG

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the _____ District of _____ KANSAS _____ *(identify the person or describe property to be searched and give its location):*

A HTC cellular phone Model PN07200, currently stored at Wichita Police Department, Undercover Section, Wichita, Kansas, in the District of Kansas.

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized):*
See Attachment A.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of ___21___ U.S.C. § _841(a)(1), 846_ , and the application is based on these facts:

☑ Continued on the attached sheet. (see attached affidavit of probable cause)

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Michael L. Thode, Task Force Officer, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: ___April ___, 2014___

_____
*Judge's signature*

City and state:  Wichita, Kansas

Kenneth G. Humphreys, United States Magistrate Judge
*Printed name and title*

FILED
U.S. District Court
District of Kansas

APR 08 2014

Clerk, U.S. District Court
By _____ Deputy Clerk

## UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

IN THE MATTER OF THE SEARCH OF       )
A HTC CELLULAR PHONE MODEL           )   Case No 14-m-6094-01-KGG
NUMBER PN07200 CURRENTLY IN THE      )
CUSTODY OF DRUG ENFORCEMENT          )
ADMINISTRATION                       )
                                     )

### AFFIDAVIT
### IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, Michael L Thode, having been duly sworn, state the following:

### INTRODUCTION

1. I am a Police Officer with the Wichita Police Department and have been so employed since 1990.   I was assigned to the Wichita Police Department Undercover Narcotics Section from February of 2006 until August of 2012.  I have been assigned as a Task Force Officer (TFO) with the Drug Enforcement Administration (DEA) Wichita, Kansas Resident Office since August of 2012.

2. During my tenure in law enforcement I have conducted numerous investigations into the transportation, possession, manufacture, and distribution of controlled substances; and the associated conspiracies.  Many of these investigations have resulted in the arrest and conviction of several defendants on state and federal drug trafficking violations.   I have debriefed confidential sources regarding drug activities and conducted physical, wire and electronic surveillance of persons

involved in drug trafficking. Through my training and experience I have become familiar with the manner in which illegal drugs are transported, stored, and distributed and the methods of payment for such drugs.

3. I also have training and personal experience in the authorized interception and monitoring of wire and electronic communications related to drug trafficking. As such, I have become familiar with the many methods and modes drug traffickers use to communicate about their illegal activities to include the use of cellular telephones with voice and text capabilities. For instance, cellular telephones are frequently used by drug traffickers to verbally and textually communicate various types of information with organization members, such as: (a) telephone numbers of co-conspirators; (b) the identities of co-conspirators involved in the drug trafficking enterprise; (c) locations of meetings with co-conspirators; (d) prices and quantities of controlled substances; (e) photographs of illegal drugs and illegal drug proceeds; and (f) alerts or warnings of the presence of law enforcement.

4. I have participated in investigations involving the interception of wire communications and electronic communications of digital display devices. I am familiar with the ways in which narcotic traffickers and money launderers conduct their business, including, but not limited to, their methods of importing and distributing controlled substances, their use of cellular telephones, digital display devices, computers and email, and their use of numerical codes and code words to

conduct their transactions.  I am also familiar with ways in which narcotic traffickers maintain records, store information, and use including, but not limited to: paper records, digital information storage in cell phones, thumb drives, compact disks, DVDs, computers, email accounts, GPS devices, and storage of information on servers.

5.  I have personally participated in the investigation set forth below.  I am familiar with the facts and circumstances of the investigation through my personal participation; from discussions with other agents of the DEA and other law enforcement officers; from my discussions with witnesses involved in the investigation; and from my review of records and  reports relating to the investigation.  Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the information was provided by another agent, law enforcement officer or witness who may have had either direct or hearsay knowledge of that statement and to whom I or others have spoken or whose reports I have read and reviewed.  Such statements are among many statements made by others and are stated in substance and in part unless otherwise indicated. Since this affidavit is being submitted for the limited purpose of securing an order authorizing the acquisition of the Requested Information, I have not included details of every aspect of the investigation.  Facts not set forth herein, or in the attached exhibits, are not being relied on in reaching my conclusion that the

3

requested order should be issued. Nor do I request that this Court rely on any facts

not set forth herein in reviewing this application.

## PURPOSE OF AFFIDAVIT

6.  Your affiant submits this Affidavit in support of application under Rule 41 of the

    Federal Rules of Criminal Procedure for a warrant(s) to search and seize data and

    records from twelve cellular communication devices, specifically described as:

    a.  HTC cellular phone Model PN07200, hereinafter "Device #1". Device #1

        is currently stored at the WPD, Undercover Section, Wichita, Kansas, in the

        District of Kansas.

7.  Individuals who deal in illegal controlled substances commonly use computers and

    communication devices to maintain addresses, telephone numbers, bank account

    information, including deposit amounts, names and numbers, drug and money

    ledgers, directions and instructions, travel, time and route navigation and

    information, and other information specific to drug dealing. In addition to

    continuing their illegal businesses, these individuals utilize computer and

    communications systems to maintain contact with their criminal associates, to

    access the internet and transact banking and other financial business over the

    internet and keep records of these transactions on the computer memories.

    Oftentimes, travel, transportation, and transaction instructions are sent and

    received via text message, e-mail or instant messages which are stored on the

4

digital memories of the various devices.  Internet e-mail providers require little or no personal information to activate e-mail accounts used to give directions and to report progress in furtherance of the illegal drug trade.  These e-mail messages are stored on the memories of the computers and cellular telephones.  Memory in computers and cellular telephones includes internal memory, and memory storage on removable devices such as SIM cards and SD cards.  In addition, some devices have built in electronic digital cameras and digital video capabilities.  Individuals who deal in illegal controlled substances often take, or cause to be taken, photographs of themselves, their associates, their properties, and their illegal products and merchandise.  Lastly, I know that electronic devices can store information for long periods of time, and even if records are deleted that many times through the use of forensic tools the records can be retrieved.

8.  Searching for the evidence described may require a range of data analysis techniques.  In some cases, agents and computer analysts may be able to conduct carefully targeted searches that can locate evidence without requiring a time-consuming manual search through unrelated materials that may be commingled with criminal evidence.  In other cases, however, such techniques may not yield the evidence described in the warrant.  Criminals can mislabel or hide information, encode communications to avoid using key words, attempt to delete information to evade detection, or take other steps designed to frustrate law enforcement searches

for information.   These steps may require law enforcement officers or other analysts with appropriate expertise to conduct more extensive searches, such as scanning storage areas unrelated to things described in the Attachments, or perusing all stored information briefly to determine whether it falls within the scope of the warrant.   In light of these difficulties, the DEA intends to use whatever data analysis techniques necessary to locate and retrieve the evidence sought.

## TECHNICAL TERMS

9. Based on your affiants training and experience, I use the following technical terms to convey the following meanings:

    a. Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used primarily for voice communication through radio signals.   These telephones send signals through networks of transmitter/receivers called "cells," enabling communication with other wireless telephones or traditional "land line" telephones.   A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones now offer a broad range of capabilities.   These capabilities include, but are not limited to: storing names and phone numbers in electronic "address

6

books;" sending, receiving, and storing text messages and email; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.  Digital camera:  A digital camera is a device that records still and moving images digitally.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images.  This storage media can contain any digital data, including data unrelated to photographs or videos.

c.  Portable media player:  A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files.  However, a portable media player can also store any digital data, such as word processing documents, even if the

7

device is not designed to access such files.  Some portable media players can use removable storage media.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can also store any digital data.  Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d.  GPS:  A GPS navigation device uses the Global Positioning System to display its current location.  It often contains records of the locations where it has been.  Some GPS navigation devices can give a user driving or walking directions to another location.  These devices can contain records of the addresses or locations involved in such navigation.  The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth.  Each satellite contains an extremely accurate clock.  Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers.  These signals are sent by radio, using specifications that are publicly available.  A GPS antenna on Earth can receive those signals.  When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the

8

antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.  PDA:  A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs.   Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive email.  PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data.   Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can store any digital data.  Most PDAs run computer software, giving them many of the same capabilities as personal computers.  For example, PDA users can work with word-processing documents, spreadsheets, and presentations.  PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f.  Digital display device:  A digital display device is a handheld wireless electronic device used to contact an individual through an alert, or a numeric or text message sent over a telecommunications network or internet network.  Some devices enable the user to send, as well as receive, text messages.

g. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer or other such device attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers or other such device have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

h. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

10. Based on my training, experience, and research, I know that the Device described in this affidavit as Device #1 commonly have capabilities that allow the devices to serve as, but not limited to serve as  a wireless telephone, digital camera, portable media player, GPS navigation device, digital display device, PDA, with an internet connection. In my training and experience, examining data stored on devices of

10

this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device as well information regarding criminal activities and criminal conspirators.

## PROBABLE CAUSE

11. On October 10, 2013, the Wichita Police Department (WPD) responded to a complaint about metal theft at 711 S. Eastridge, Wichita, Kansas. WPD officers contacted Luis Felipe CORTEZ-Parra at 711 S. Eastridge. CORTEZ-Parra claimed to live at 711 S. Eastridge. While investigating the complaint WPD officers obtained consent to search CORTEZ-Parra's room. WPD officers found 2.72 grams of cocaine on top of a suitcase containing 981.2 grams of methamphetamine and 1109.7 grams of cocaine. Device #1 was on a night stand in this room by a traffic ticket with the name Felipe Parra on it.

12. The drug evidence was seized by the WPD. The WPD obtained a state search warrant for the residence of 711 S. Eastridge. Device #1 was then seized by the WPD. On October 11, 2013, CORTEZ-Parra chose to waive his Miranda warnings and talk. CORTEZ-Parra said he uses cocaine and the 2.72 grams of cocaine on top of the suit case was his. CORTEZ-Parra later recanted the ownership of the cocaine. CORTEZ-Parra said he did not know about the drugs inside the suitcase and said the suitcase was not his.

13. CORTEZ-Parra said he used his cellular phone (Device #1) to call his cocaine source of supply to obtain cocaine.   CORTEZ-Parra signed a waiver to search Device #1.   Data from Device #1 was obtained by DEA however this evidence was contaminated with evidence from another case.   The original data remains secure on Device #1.

Further, your affiant saith not.

Michael L Thode
Task Force Officer
Drug Enforcement Administration


SUBSCRIBED TO AND SWORN before me this 8th day of April, 2014.

Honorable Kenneth G. Gale
United States Magistrate Judge
District of Kansas

12

# **ATTACHMENT A**

The items to be seized from **Device #1:**

1.      All data and records contained in Device #1 that relate to violations which constitute the fruits, instrumentalities, and evidence of possession with intent to distribute and distribution of a controlled substance in violation 21 U.S.C. § 841(a)(1); and conspiracy to possess with intent to distribute a controlled substance in violation of 21 U.S.C. § 846;

     a.  Data, including but not limited to, the telephone number of the device, telephone numbers of the accessed device, received incoming telephone numbers, dialed outgoing telephone numbers, numeric messages sent or received, verbal messages sent or received, address and telephone/pager number listings, electronically composed memorandum, any time and or data markings and or calendar format organization of all such data, or any other data related to drug trafficking, including photographs, which may be stored, received, or sent, contained in the electronic memory of the previously described device,   lists of customers and related identifying information;

     b.  types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

1

    c.  any information related to sources of narcotic drugs (including names, addresses, phone numbers, or any other identifying information);

    d.  all bank records, checks, credit card bills, account information, and other financial records.

2.     Evidence of user attribution showing who used or owned Device #1 at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3.     Records and things evidencing the use of the Internet Protocol address utilized by to this device to communicate with criminal coconspirators, or unwitting individuals or institutions were used to facilitate drug trafficking or money laundering crimes, to include:

    a.  records of Internet Protocol addresses used;

    b.  records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

4.     As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

2